The next matter on our calendar is United States v. Peter Ressler. Thank you. Good morning. My name is Dennis Sivaco, I represent the appellant in this case, Peter Ressler. If it may please the court, we are here today seeking a vacatur of the sentence which was administered to Mr. Ressler because of the government's breach of the terms of the plea agreement. In addition, we are seeking a vacatur of the sentence and a remand for resentencing in addition because the district court committed a reversible error by failing to disclose in the sentencing whether or not the recommendation of the probation office issued prior to the sentence was followed or not. I think he said he didn't follow it. Didn't he say on the record that he didn't follow it? Your Honor, I believe that the record is a little murky on this point as far as we are concerned. The question about the specific recommendation which was given to the court and sealed pursuant to local rules. So the defense never had a chance to see it. I don't believe the government had a chance to see it either. I think that this is a central issue and while I framed it as the second issue in this case, I think it's a very important issue because we know from the PSR that as the probation office interviewed the defendant and the victims and analyzed the case and conferred with the prosecution, received our submission regarding the pre-sentence report. It's important to point out that the pre-sentence report that was given to the court prior to the day of sentencing indicated in no uncertain terms that the guideline range that had been agreed to in the plea agreement was excessive under the circumstances. We know that. We were able to see the PSR. What we were not able to see was the specific recommendation from the probation officer that as we know from the record was delivered to the court sometime just shortly before the sentencing proceeding was to commence that day. As a matter of fact, at some point in time late in the proceeding, the judge stood up and generally asked aloud to the courtroom if we had seen the recommendation that had come in that day. Obviously, my response was that I was not able to see it pursuant to the local rule and I believe the government indicated that they hadn't seen it either. So I think that this issue, when taken with our contention that the government breached the agreement, that this issue concerning the probation recommendation is critically important. We know from the PSR that the probation took the position that the 63 to 78 months, which was the guideline range agreed to in the plea agreement, was excessive under these circumstances. I doubt, therefore, even though I didn't see the specific recommendation, I doubt, therefore, that on the day of sentencing that probation would have recommended 63 or up to 78. We don't know whether the recommendation was 61, 62, or 40 for that matter. And I think that it's critical because if the recommendation to the court that day was for a sentence that was substantially less than the 63 to 78 based upon the- I think that. I'm sorry? You think that. You don't know that, correct? Correct, Your Honor. Correct. That is, I'm extrapolating from the position. So what I do believe, and again, I am speculating, that the recommendation that day was something less than the 63 months that was administered here. The judge was free to disregard it. There's no question, the judge was free to disregard it. But in disregarding it, in the point of our appeal on this point, is that he didn't explain for the record why he was disregarding that specific sentence. What was he required to? In the context, Your Honor, the totality of the circumstances from running from the plea agreement to the elocution at the time of sentencing. I think when you take the totality of the circumstances into account, that recommendation was critically important. The other point that I want to stress here is that we believe that the government, again, reviewing the totality of the record, the totality of the circumstances, violated a central element of the plea agreement, which my client entered into.  I'm sorry, Your Honor? You think they violated it directly or by implication? Your Honor, I think, so I was there that day, as Mr. Schmeiser, my learned colleague, was as well. I believe that it was both. I think as I reviewed now the transcript of the proceedings and the stark light of the ability to deliberate on the proceedings that day, that what happened on that day of sentencing was very reminiscent of what happened in two cases that this court has previously reversed and remanded. One being Lawler and the other being Vavelle. In Vavelle, I think that the government's conduct that day was to chastise the defendant for his extensive criminal history. If you were that clear, Mr. Vavelle, why on the record, since you were there, didn't you object? Your Honor, look, so there's no question, the record reveals that we did not object. But I don't think that that prevents us from seeking a- I don't know, but we review it for plain error rather than- Exactly. That's a much harder call. If it was not plain error, I think that you would prevail based on the record as I read it. I think the government was very cute in the way they described their previous agreement. They came very close to the line of breaching the agreement. But on plain error review, it's hard to find it. But Your Honor, so I'm not going to disagree that the state- In that it said the defendant and counsel have done markedly more than a typical defendant to redress the consequences. This office has determined that a departure is warranted under the circumstances, but it's for this court to evaluate what credit is appropriate. I mean, they advocated as promised for requesting a departure. But unfortunately, Your Honor, they walked that back at the time of- The way I read the transcript, they said, here's what the starting point is. And they said- Yeah, so was their acknowledgment that the starting point was the 63 to 78, whatever it was? Yeah, months. Was that the error? No. Well, that was part of it. I mean, again, the totality of the circumstances, I think that prior cases of this court have- Did you dispute that that was the starting point? That that was the range? That was the agreed upon range in the plea agreement. But the government uttered that phrase no fewer than 13 times. The starting point? The starting point being 63 to 78 was uttered, go back to the transcript as I did, count them up, 13 times that phrase was uttered. Eight after I had submitted our witnesses and my presentation. Eight of those 13 came after my presentation. But I think, Your Honor, more directly to your question, the position of the government that is most stark here, in my estimation, twofold. One was the fact that during my presentation, I advised the court that my client voluntarily came forward with counsel to cooperate with the government without a proffer agreement. Those are facts. He came forward, he wasn't arrested. And he was just on the verge of being arrested, was what the government's position was, right? Well, that was the government's position, but I believe that that position was inconsistent with the spirit of the agreement. You have to look at the agreement from the perspective of what the parties intended when they entered into it. And I believe that that position, when on rebuttal, as I characterize it, Mr. Schmeichel gets up there and says, well, he was going to get caught anyway. And we had substantial evidence against him. It was designed to simply undermine the fact that my client came forward. He came in before the dam burst, is one of the expressions he used. He came in before the dam burst, but I used him coming in, in my presentation, as an example of the type of cooperation that he was providing, which was the central premise of the stipulation in the agreement that he was entitled. But it's not cooperation in the 5k1.1 sense, is that right? It's not, and frankly, as we said in our brief, I think that the government's reference to the fact that this is that 5k1 departure, it was another subtle indication, another subtle signal to the court that you don't have to do anything more than the 63 to 78. But the other thing that I find very stark is that the court asked almost everybody who came up to the microphone that day, at least the lawyers who presented. He asked the lawyers, what do you recommend to be an appropriate range for sentencing here? At near the end of my presentation, before the judge asked me, I gave him, I answered the question before it was asked, and I told him that I thought that the appropriate range, given all of the circumstances, was half of the 63 months, which was the bottom end of the 63 to 78 range. When the government was asked the same question, the government not only demurred, but more importantly, the government didn't even reference the stipulation by saying that, while I have no, I'm quoting what I think the government should have said more appropriately. While I have no specific recommendation, because I leave that to the court, I want to point out to the court that we agreed that he is entitled to a downward variance because of his cooperation. The government didn't even say that. And at the end of the day, I think that goes right to the heart of their breach, that they were unwilling, even when the court asked them for a specific range, to not even acknowledge the fact that they had agreed in the plea agreement that Ressler was entitled. That's the word. Yeah, that's the word that was used. But of course, the government isn't empowered to determine what he is entitled to. The court determines what he's entitled to. No question. The government might have used the word, he has earned in our estimation a variance, that this kind of cooperation is really helpful, and we would urge the court to consider it. More eloquent. Entitlement, I think it's not entirely. I don't disagree with your premise, your honor, that the court makes the final decision. So nobody's entitled to anything in the courtroom. Just as I stand here today, I'm not entitled to anything either. But what was missing was, as you just characterized what the government should have said, even that was missing. There wasn't even just a simple acknowledgement that your honor, pursuant to the agreement that we entered into, the defendant should be eligible, to change the word entitled, for a downward departure based upon his cooperation. When asked for a specific recommendation, they couldn't even say that. And at the end of the day- Am I right in understanding that then you want a vacatur and resentencing? Is that right? And that means the plea agreement is- No, I'm not looking for- What are you looking for? I'm looking for a vacatur to remand for sentencing only before a different judge. Thank you, counsel. Thank you. May it please the court, Christopher Schmeiser for the United States. As you've gotten from Attorney Vacco, I was the counsel that was involved in the investigation and also at the plea and at sentencing. Counsel, if a plea agreement said the parties agree that the defendant is entitled to a downward departure or the relevant guideline range. That's correct, your honor. Your argument now that he got that when he got the agreement, that he got the points off for cooperating? Your honor, in terms of whether he got the credit for the departure, I don't know exactly what the district court was ultimately thinking in terms of how they were waiting. What you were thinking when you said that the starting point is the guideline range. When you here seem to agree that he was entitled to a downward departure from the relevant guideline range. That's what's in the plea agreement. Your honor, I understand that. And in terms of the actual language of the plea agreement, the way it was crafted, Mr. Vacca was not involved in the actual crafting of that language of the plea agreement. No, but you were involved. I was, that's exactly right, your honor. I'm asking you what this meant. What it meant was that defense counsel wanted an opportunity to make sure that there was an argument to go below the guidelines range. Language that troubles. It says the parties. I understand. Includes the government. Agree that the defendant is entitled to a downward departure or variance from the relevant guideline range. And then when you come into court, you don't say that. You're asked about whether there should be a downward departure. And you say, the government submits, that's on page 8227, there's not a valid basis or basis that warrant departure or variance. Tell me why this isn't a breach of the agreement. Your honor, I'm glad you actually brought up that particular point. Thank you, I'm glad you're glad. Because the defense raised four or five arguments for downward departure. The government in its sentencing memo made very clear that it did not,  If you actually go back and look at the transcript, and that's why in the government's brief, it took significant issue with the way the defense counsel characterized that section of the transcript. That section of the transcript, if you go back and look at it, is referring to the government's response. The government said very clearly that there was no basis for departure based on the several grounds that defense counsel had advocated. You agreed in the plea agreement that there would be a basis. I just- But your honor, my point I'm making is that if you actually look at the transcript, the government said that as to the two or three grounds raised by the defendant for departure. That were not the ground for assistance. That those were not valid grounds for departure. You say there is one ground. That's exactly right, your honor. Then you go on in the transcript, and it's not referenced in the defense counsel's brief, which is then explained in the government's brief. The government then went on and made very clear to the court, there was one ground that was a basis for departure or for assistance. Which gets me to my big point about this. This is where you say, now that doesn't undercut the fact that he did that. The government submits, he should get some credit for that and for the other things set forth in the memo. That's exactly right, your honor. That's exactly right. What I want to get a sense of this court is that going into this whole process of sentencing, the government was fully, and throughout the sentencing, fully supporting Mr. Ressler's ground for departure. In the sentencing memo, if you go back and look at the government's sentencing memo, which was submitted right before the time that the court actually came out and considered this lengthy hearing, the government's sentencing memo went in great detail, great detail, explaining the efforts that the defendant had made towards assistance. And if you go back at that and look at the multiple pages of that- But still, you did a lot more in the sentencing memo than you did actually at the sentencing hearing, right? Because, your honor, what happened at the time of the sentencing hearing, I would say that it was laid out in great detail. I would say at the sentencing hearing, it was the government's intent to basically refer by reference, since the court came out having plainly read the materials, basically saying to the court, judge, here's the framework. Here's a framework that there's a guidelines range that is applicable here, and then give the defendant some credit. Now, throughout the time of that hearing, that's what I was saying. I was saying, judge, here is the original starting point. And defense counsel takes issue with that. It was said 13 times. It was said 13 times primarily in two ways. One, in the context of, judge, here's the starting point, and then you give some credit. That was the first three or four phrases. If you look at the reply brief, I've had a chance to go back and look at it. Defense counsel doesn't mention what it says, the government talks about this being a starting point. The reply brief then does not quote the language that happens in the next two or three sentences on the transcript, where the government is then saying, then give some credit. So in other words, it was every time that initially the mention of the guidelines range was done, was frankly to remind the court of the framework advocated by the government. That you had a starting point of this range, and then you had the credit afterwards. Later on, and defense counsel gets up and said it was after his comments, the government talked about justifying the starting point of the guidelines range. At that point, having sat through that hearing, defense counsel had come back, and in his tone, and then the way he was discussing the guidelines, it was that this advisory range, it's merely advisory. What we have here is a bankruptcy case, it's sort of a civil case, and it's really sort of undercutting the whole idea that the guidelines range really was an appropriate starting point for the court to consider. In addition, the defense counsel who had not been part of the initial part of the investigation, his co-counsel Willie Dow had been part of that and had walked through this whole process. He was the one who had been involved in bringing the defendant in and all that initially, and that early part of the investigation. And so, Mr. Vacco made some comments on the record, which strongly suggested that the defendant had before any idea that this was coming, that things were going to happen, was coming in and was doing this in this context. Now, I take duty of candor to the court very seriously. And at the time that those comments were made, it appeared to me that the court needed to understand that this guidelines range was an appropriate starting point, that it wasn't being pulled out of the air, that there was strong factual basis for this being the starting point. But as I read to you, the plea agreement says there would be a departure from the guideline range. That's exactly the point. Your Honor, and the plea agreement also goes on to say the court, if you look at the language, the next sentence of that very clearly says, as will be outlined to the court at sentencing, at which point the court may determine to credit the departure variance and determine what weight, if any, to give it. And this- You argued for a downward departure. You said this is the range and then you say, and I'm quoting as I said from page 8227, the government in its sentencing memo has indicated that a number of grounds the government submits, there's not a valid basis or basis that warrant departure or variance. Tell me why that isn't a breach. But Your Honor, continue on in the sentencing memo. I read that, but what is the significance of these words? Those words are relating to the other grounds for departure. He sought a departure for extraordinary restitution, which he sought a departure for family circumstances. He sought a departure, I believe, for his wife's health condition. He didn't like the grounds he mentioned. So those other grounds, I did not think there was a valid legal basis for. I never found any grounds that you would argue. That's not true. If you look at the government sentencing memo, in great detail, at great length, it says there was one ground. And the ground for- At 8297, you say, in fact, the plea agreement says what the party's agreement was, which the multiple steps taken to assist the government and civil authorities would be outlined for the court at sentencing, at which point the court may determine to credit the departure variance and determine what weight, if any, to give it. That's not really kind of an enthusiastic endorsement that some kind of departure is warranted, but it still is mentioning that the cooperation is what you had in mind, I think. And, Your Honor, I think as it relates to the 5K, that's correct, Your Honor. And as it relates to the discussion of the 5K1 motion in the sentencing hearing, I think there's a little misunderstanding from defense counsel as to sort of Connecticut's practice regarding assistance letters. In Connecticut, the government does not recommend a specific sentence. It basically lays out the facts of what a basis is for downward departure, and then leaves it to the court. It's the court's decision to determine what credit to give any appropriate level of departure. The agreement entitled the government to answer factual questions. That's correct, Your Honor. So the point, when the judge asked me, he said, well, what sentence would you recommend? At that point, I referenced, Your Honor, this is not a technical cooperation letter, but it is equivalent to a cooperation letter. And in essence, I'm going to follow the same procedure there as I do in a 5K1 letter, and in frankly most sentencings, where we basically say, Judge, here's what the guy did, which I laid out in great deal in the sentencing memo. You're the judge, you've now heard everything, figure out whether you want to, what sentence you ultimately want to give this defendant. Would you agree that the use of the word entitlement, that the defendant is entitled to a downward departure, may have created expectations? I don't think so, Your Honor, because I think at the time it was being negotiated with Attorney Dow, and the language was entered. The idea was, you had a guidelines range that you didn't want a district court judge, even though it's advisory, to be looking at and thinking, if I go below the guidelines range, I'm going to create an issue where the government's going to appeal. And there's going to be some challenge to my sentence. And the idea of having language that says, look, the government agrees that the defendant is entitled to departure. We're going to, those facts are going to be presented. You have a guidelines range. That's right, Your Honor. That's right. That's what the government agreed to. To a level that would be determined. Variance from the guidelines range, and then you come into court at sentencing and say, we don't see any grounds for a downward departure. Your Honor, I think that that last part is just, I would invite you to go back and look at the government's sentence. One ground. Exactly right, Your Honor. That is the ground that I started with, and if you go back, I think, to 193. That's when you talked about the court, the government submits should determine that what if any departure should be given to give credit for the defendant for what he did. That's correct, Your Honor. And I think one other. Let me go on to say that he got all the departure he needed when he got the credit. Reach it before you reach the 63 number, whatever defense counsel, determine what credit should be appropriate will provide the appropriate basis. You said he got all the credit when you got to 63 months. Your Honor, I don't believe that's a correct and accurate reading of what the government said. In fact, the whole purpose of the government's presentation, having done an extensive sentencing memo, which really outlined in detail what the government thought, was to really give the court the justification for why the starting point made sense, and to allow the court information to make an assessment as to what credit to give the cooperation, if any. Now, in terms of, there's one other element as it relates to the defense counsel's argument. In his pleadings, he talks about, well, the government didn't come in and itself put on a bunch of different evidence at sentencing, having already said a bunch of it in the sentencing memo. There was an understanding with counsel, and I think if you look at the early part of the government's comments, where it says this is the framework, and then says that counsel will present sort of additional evidence. Well, what happened during the course of the hearing, and the way it was framed, is that Attorney Vacco was going to call Attorney Katz. Now, Jonathan Katz was the attorney who had actually handled all of the civil bankruptcy mess that happened afterwards, and handled that dealing with Mr. Ressler, and was working towards getting that all resolved. So it made sense from the government, and I believe from Mr. Vacco's perspective, to call Attorney Katz to lay out a lot of this stuff during the course of the defense presentation. So, because I wasn't there, I wasn't in the bankruptcy court, I wasn't arguing the motions. Attorney Katz was, with Attorney Ressler, to the extent Attorney Ressler was presenting that. So in terms of evidence regarding a good portion of the substantial assistance, or the assistance that he was providing, made sense to come from Attorney Katz. So, from my perspective, I believe that I fully complied with the agreement that we had with the parties. Could I ask a factual question? Yes. I was a little confused about restitution that was made in terms of the cooperation. Did Mr. Ressler merely provide records so that claims could be made on the state's fund, a client security fund, or did he in fact make restitution himself? My recollection was that he did not make restitution himself, that I can recall. It was basically to facilitate the process by which claims are going to be made against the client security fund. And paid by the state and lawyers who had contributed to it. That's correct. For example, if a Ressler came in and said, look, I did steal this amount of money. And they were able to submit a claim, and the bankruptcy court was able to enter an order in a certain dollar amount. That could be submitted to the client security fund without a hearing on what exactly happened to the attorney. So it was- He untangled the records. Exactly right. He wasn't making restitution himself. That's exactly right. Just to go back to the 63 to 78 months, when you said that that's the starting point. Isn't that also in the plea agreement? That's correct, Your Honor. The plea agreement says it's effectively the starting point, and you're entitled to a down and departure from the starting point. That's correct, Your Honor. Thank you, counsel. Thank you, Your Honor. A reserved decision. Thank you.